**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

LAURA CALVIN,

      **Plaintiff,**

vs.                                    **No. CIV-05-283 WDS/ACT**

STATE OF NEW MEXICO,
et al.,

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

### Introduction

THIS MATTER is before the Court on two motions for Rule 35 independent medical examinations ("IME's") filed by Defendants Board of Regents of the University of New Mexico, Dr. Gulshan Parasher and Dr. Anthony Madrid, and another motion by these Defendants to extend their deadline for filing expert reports. [Doc. Nos. 21, 25, 27.] All three motions are fully briefed.[1] [Doc. Nos. 29, 30, 31, 33.]

### Factual and Procedural Summary

On February 9, 2005, Plaintiff Laura Calvin ("Ms. Calvin") filed a Complaint to Recover Damages for Personal Injuries Arising from Medical Negligence against Defendants State of New Mexico, Board of Regents of the University of New Mexico, Dr. Gulshan Parasher, and Dr. Anthony

---

[1]Plaintiff filed a single brief in opposition to both motions for IME's and the motion for extension. [Doc. No. 29.]

Madrid ("Defendants").  [Doc. No. 1.]  Defendants removed the case to federal court based on diversity jurisdiction.

Ms. Calvin seeks an award of damages for alleged medical negligence.  [Doc. No. 1.]  More specifically, she contends that she was diagnosed with gall stones in the common bile duct and inflammation of the gall bladder.  Ms. Calvin was then transferred from the Gallup Indian Medical Center to University of New Mexico Hospital ("UNMH") so that an endoscopic retrograde cholanglopancretography procedure ("ERCP") could be performed.  Dr. Parasher and Dr. Madrid, while employed with UNMH, performed the ERCP.  According to Ms. Calvin, the Defendant physicians performed negligently when they inserted a stent into her pancreatic duct that then migrated and lodged inside her pancreas.  As a result of Defendants' negligence, Ms. Calvin contends that she now suffers from digestive and other endocrine and exocrine complications.  She alleges that she suffers and continues to suffer physical, emotional and economic damages due to Defendants' negligence.  [Doc. No. 1 and Initial Pre-Trial Report.]

Several subsequent attempts at UNMH were made to remove the stent, but they failed.  Ms. underwent another ERCP conducted by physicians at the Mayo Clinic.  That attempt failed as well. Defendants assert, *inter alia*, that stent migration is a known risk of the ERCP procedure, that Ms. Calvin consented to the procedure and understood the risks associated with it, and further, that the stent can still be removed, thereby avoiding permanent injury.  [Initial Pre-Trial Report.]

Current discovery deadlines and court settings are as follows:  the cutoff date for discovery is November 28, 2005; a settlement conference is on December 7, 2005; the substantive motion filing deadline is January 16, 2006 (including motions that may require a Daubert hearing); and a non-jury trial is scheduled for May 23, 2006.  [Doc. Nos. 15, 16.]

In the parties' joint Provisional Discovery Plan ("PDP"), filed May 27, 2005, the parties agreed that any Rule 35 IME would be completed by August 5, 2005, with reports due within two weeks following the examination(s). [Doc. No. 9.] On June 1, 2005, the Court entered an Order adopting and modifying the attorneys' Provisional Discovery Plan. [Doc. No. 11.] Plaintiff's deadline for identifying experts and providing reports was August 30, 2005. Defendants' deadline was September 29, 2005. The Order did not address specific deadlines for IME's. However, the Court's adoption of the Attorneys' PDP with changes, in effect, left the attorneys' proposed deadline for such exams as agreed to by the attorneys. [Id.]

Plaintiff complied with her August 30, 2005 deadline to identify her experts and provide expert reports. [Doc. Nos. 15, 20.] On September 16 and 28, 2005, Defendants filed motions for IME's. On their September 29, 2005 expert deadline, Defendants filed a motion to extend the deadline and apparently supplied the identities of their experts. However, defense counsel stated in the accompanying certificate of service that Defendants' experts would be unable to submit expert reports until after conducting the IME's of Plaintiff. [Doc. No. 26.] Presently, Defendants have scheduled IME's of Plaintiff on October 27, 2005 and October 28, 2005 with the two identified experts. Thus, Defendants seek an extension for the deadline of their expert reports until November 21, 2005, almost two months after their initial deadline and three weeks after their experts conduct the IME's.

Both IME's are presently scheduled to take place in Boston, Massachusetts where defendants' proposed expert physicians practice. At issue in Defendants' three motions are the timeliness of the scheduled IME's, the need for the IME's, and the location of the examinations.

3

### Defendants' Motion for Extension

As stated above, Defendants seek an extension of almost two months for the submission of their expert reports.  They argue that they timely identified two "leading, world-renowned experts" in the area of pancreatic medicine, but that it was difficult to schedule the IME's and provide reports because of these physicians' busy practices.  Thus, Defendants were unable to meet the deadline by which to submit their expert reports. Defendants assert, *inter alia*, that they need these experts to examine Plaintiff so that Defendants can adequately and comprehensively evaluate Ms. Calvin's damages claim and the need for any future treatment, in advance of the December 7, 2005 settlement conference.

Ms. Calvin argues that Defendants have known the identities of these two experts from early in the litigation yet failed to comply with agreed-upon deadlines.  Instead, Defendants filed one motion for an IME two weeks before their expert report deadline and another motion for an IME one day before that deadline.  Clearly, Defendants knew well in advance of September 29, 2005 that they could not fully meet the deadline, yet they waited until the last minute to file a request for a two-month extension.  The Court does not condone defense counsel's tardy efforts, particularly here, where Defendants knew the identities of their experts early in this proceeding.

The Court knows from experience that it is the exception rather than the rule that an expert in a medical malpractice case conducts a Rule 35 examination.  Even if defense counsel or Defendants' experts felt a Rule 35 IME was necessary to provide a final report addressing all of the issues in this case, there is no reason Defendants' experts could not have provided a preliminary report.  Defense counsel has had ample opportunity to provide defense experts with medical records, diagnostic studies, deposition testimony, and other information necessary to prepare a report

regarding liability and at least a preliminary report regarding damages.  Defendants' counsel offers

no explanation as to why this was not done and why the other requirements of Rule 26(a)(2)

disclosures were not satisfied by the deadline.[2]  Likewise, Defendants provide no good reason why

a motion requesting an extension of time to provide the Rule 26(a)(2) disclosures was not filed

earlier.

Notwithstanding the Court's concern with Defendants' leisurely approach to complying with

case management deadlines, the Court will grant the motion under the circumstances of this case

where the trial date is not disturbed by the extension.  Plaintiff also will be given the opportunity to

extend discovery for the sole purpose of deposing defense expert(s) who examine Ms. Calvin.  Thus,

the extension will not prejudice Plaintiff.  The Court's newly assigned case management deadlines are

set out at the end of this opinion.

**Defendants' Motions for IME's**

Defendants request that two separate specialists conduct IME's of Ms. Calvin.  They contend

the examinations are necessary with respect to liability and damages issues.

### A.    Dr. David L. Carr-Locke

Defendants assert that Dr. Carr-Locke is a world-renowned expert in interventional pancreatic

and biliary endoscopy.  They further state that Dr. Carr-Locke will perform "only those tests

necessary to ascertain the extent of Plaintiff's physical injury, and prognoses . . . ."  Because of Dr.

Carr-Locke's expertise, Defendants aver that he is in a position to determine whether the stent in Ms.

---

[2]According to Plaintiff's counsel, not only did Defendants fail to provide expert reports by the deadline, they failed to submit a statement of the experts' qualifications, a list of publications of the experts, a statement of compensation to be paid to the experts and a list of cases in which the experts have testified during the last four years.  All of this information should have been supplied to Plaintiff at the time the experts were identified.

5

Calvin's pancreas can be removed endoscopically. Defendants initially did not specify what tests Dr. Carr-Locke might perform. In their reply, Defendants note that Dr. Carr-Locke will perform a physical examination and may review the CT scan of Ms. Calvin's pancreas. They further note that Dr. Carr-Locke has no intention of subjecting Ms. Calvin to another ERCP, but instead seeks to obtain enough information to determine whether another ERCP might be successful in removing the stent. Defendants request that Ms. Calvin be examined at Dr. Carr-Locke's office in Boston, Massachusetts on October 27, 2005.

### B.      Dr. Andrew Louis Warshaw

Defendants assert that Dr. Warshaw is a world-renowned expert in pancreatic and hepatobiliar surgery. He intends to review a pancreas protocol CT scan to be performed on Ms. Calvin at the Massachusetts General Hospital in Boston where Dr. Warshaw practices. Dr. Warshaw seeks information to determine the extent of Ms. Calvin's physical injuries, the need for future treatment, and her prognoses. Defendants expect Dr. Warshaw to be able to ascertain whether the stent in Ms. Calvin's pancreas can be removed surgically without a pancreatic resection procedure as Plaintiff has claimed might be necessary. Defendants request that Dr. Warshaw examine Ms. Calvin in Boston, Massachusetts on October 28, 2005.

### C.      Plaintiff's Position

Plaintiff first observes that Defendants failed to serve any expert witness report on liability. Thus, Plaintiff argues that Defendants should be precluded from denying liability at trial or from using Dr. Warshaw or Dr. Carr-Locke to testify as to liability issues. The Court disagrees.

The Court was not provided with a copy of Defendants' expert witness disclosures or a description of their proposed testimony. However, in Defendants' Motion for Dr. Carr-Locke to

6

conduct an IME, they assert that the IME is necessary to determine whether the UNMH doctors'

alleged "negligent use and/or placement of the pancreatic duct caused Plaintiff's injuries."

Defendants also state that the IME is necessary "to defend against the various theories of liability

asserted in her Complaint." [Doc. No. 21, p. 3.] Defendants set forth the same arguments in their

motion for Dr. Warshaw to conduct an IME. [Doc. No. 25, p. 4.] Based on these assertions by

Defendants, the Court will not prohibit Dr. Carr-Locke and/or Dr. Warshaw from testifying about

liability issues, provided they are qualified to do so.

Plaintiff next argues that the proposed IME's are onerous, not necessary, involve unspecified

and unjustified procedures, and will prejudice Plaintiff by increasing the costs of litigation. Plaintiff

asserts that for any or all of those reasons Defendants' requests to conduct the IME's should be

denied. In the alternative, Plaintiff states that if the Court grants Defendants' motions, the Court

should impose strict conditions.

## Analysis

I.    RULE 35(a) LEGAL STANDARD

Rule 35(a) of the Federal Rules of Civil Procedure provides that when a party's physical

condition is in controversy, the court may order the party to submit to a physical examination by a

suitably licensed or certified examiner. Such order "may be made only on motion for good cause

shown and upon notice to the person to be examined and to all parties and shall specify the time,

place, manner, conditions, and scope of the examination and the person or persons by whom it is to

be made." Fed. R. Civ. P. 35(a). The authors of the treatise Federal Practice and Procedure note that

a Rule 35 examination is "part of an objective search of truth rather than an adversary proceeding."

8A C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure, § 2239 (1994).

The decision to grant requests for IME's under Rule 35 is left to the sound discretion of the Court. O'Sullivan v. Rivera, 229 F.R.D. 184, 186 (D.N.M. 2004) (internal citation omitted). "The words 'good cause' in Rule 35 indicate that there must be a greater showing of need than relevance." Id. (*citing* Schlagenhauf v. Holder, 379 U.S. 104, 117-18 (1964)). Courts have concluded that good cause exists for permitting a Rule 35 IME when, without such an exam, the defendant would be limited to cross-examination of the Plaintiff's expert. Id. at 186-87; Simpson v. Univ. of Colo., 220 F.R.D. 354, 362-63 (D. Colo. 2004). While a court may ultimately decide that good cause exists for ordering an IME, the court also retains "considerable discretion to establish the manner, conditions and scope of the examination." Simpson, 220 F.R.D. at 363.

II.     DISCUSSION

As an initial matter, the Court must determine whether the movant has adequately demonstrated the requirements that Plaintiff's physical condition is "in controversy." Schlagenhauf, 379 U.S. at 118-19. Plaintiff's Complaint for Personal Injuries alleges that she suffered physical, mental and emotional injuries as a result of Defendants' alleged medical negligence. [Complaint, at ¶¶ 51-55.] "[T]here are situations where the pleadings alone are sufficient to meet these requirements. A plaintiff in a negligence action who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." Id. at 119. Here, there is no question that Plaintiff's physical condition is in controversy. Plaintiff does not argue otherwise.

Next, the Court analyzes whether the movant has established "good cause" for the IME's. The good cause requirement under Rule 35 "is not met by mere conclusory allegations of the pleadings - nor by mere relevance to the case – but requires an affirmative showing by the movant that . . . good

cause exists" for ordering the examination. Id. at 118. Moreover, Rule 35 does not preclude multiple examinations, but it does require the movant to show good cause for each examination. Meadows v. Home Depot USA, Inc., 2002 WL 70364 at *2 (D. Kan. 2002). The Court concludes that Defendants have established good cause to conduct both of the IME's. Here, one of Defendants' proposed experts intends to perform an examination to gain information as to whether the stent can be removed endoscopically or by way of another ERCP. The other proposed expert seeks to examine Ms. Calvin for purposes of determining whether surgery is an option in removing the stent, without the need for a pancreatic resection procedure as Plaintiff has alleged will be necessary.

Ms. Calvin contends that Defendants' negligence forces her to make undesirable choices in medical treatment, none of which are likely to resolve the problem without serious complications. [Complaint, ¶ 39.] In other words, she alleges that if the stent is left inside her pancreas, she would be highly susceptible to blockage of normal enzyme flow from the pancreas and to pancreatic leaks. She also would face an increased risk of pancreatitis and of pancreatic cancer, both of which could be fatal. On the other hand, if the stent is removed, she alleges that she would need a pancreatic resection that involves removal of the head or the tail of the pancreas. If the tail of the pancreatic is removed, she would be rendered a diabetic; if the head of the pancreas is removed, she would suffer digestive related complications. [Complaint, ¶¶ 41-44.]

Defendants seek to challenge these allegations with evidence from the proposed medical experts' examinations of Ms. Calvin. Defendants assert that IME's are necessary to assess Plaintiff's prognosis. Defendants also contend that a full and complete assessment of Ms. Calvin's current physical condition is necessary to defend against her claim of future medical damages and for purposes of analyzing liability issues. The Court concludes that there is good cause for the IME's

based on the allegations and issues in this case and Defendants' defense as to matters regarding liability and present and future damages.  The Court further finds that such information is not available elsewhere.

The Court overrules Ms. Calvin's objections that the proposed IME's are onerous, not needed or involve possibly invasive procedures. Defendants explain that the proposed IME's are limited in scope and non-invasive.  For example, Dr. Carr-Locke will not be performing another ERCP.  According to Defendants, he will only be performing a physical examination of Ms. Calvin and may also review the CT scan of her pancreas.  Dr. Warshaw will be conducting and reviewing a CT scan of Plaintiff's pancreatic area and examining Plaintiff to assess the extent of Ms. Calvin's injuries and the best options for future treatment.  The Court would not permit the IME's to involve invasive procedures; e.g., another ERCP or the use of anesthesia to perform some type of more invasive procedure.  The Court, however, does not consider the use of CT scanning to be invasive.  Thus, the Court concludes that the proposed examinations are reasonable in scope.

Ms. Calvin also argues that she should not be compelled to travel to Boston, Massachusetts for the IME's.  Defendants state that they were unable to locate any medical authorities of the caliber of Dr. Warshaw and Dr. Carr-Locke in New Mexico.  Defendants offer to pay for Ms. Calvin's airfare, accommodations, meals and incidental expenses in traveling to Boston.

The Court will not order Ms. Calvin to travel to Boston for the IME's as it has not located any legal authority requiring a plaintiff to travel outside the district in which the Court sits for purposes of undergoing an IME.  *See* Bennett v. White Laboratories, Inc., 841 F. Supp. 1155, 1159 (M.D. Fla. 1993) (similarly noting there is no such authority); Costanza v. Monty, 50 F.R.D. 75, 76 (E.D. Wi. 1970) (observing that an IME may be performed in the district where the court sits so that

the physician would be subject to the court's jurisdiction should the expert's testimony be needed at trial). Thus, in concluding that Ms. Calvin cannot be compelled to travel to Boston for the IME's, the Court overrules Plaintiff's arguments that she will be prejudiced by incurring significant additional costs.[3]

Defendants now have the option of bringing their experts to this District in order to conduct the IME's or retaining different physicians who can perform the examinations in this District. If Dr. Warshaw and Dr. Carr-Locke cannot travel to this District on the previously scheduled dates, the IME's can be rescheduled or Defendants can identify new or additional expert witnesses to conduct the IME's within this District. The Court has adjusted some of the case management deadlines as set out below to accommodate Defendants in this regard.

With respect to the limitations that the Court will impose on the Rule 35 examinations, the Court provides the following guidance:

(1) Defendants will be permitted an extension of time to submit expert reports both on issues of liability and damages;

(2) The IME's must occur within this District and may be videotaped or recorded by a voice recorder if Plaintiff so requests;

(3) Neither counsel nor treating physicians are allowed to be present during the IME's;

(4) No invasive testing is permitted by the expert physicians; however, CT scanning and blood tests are permitted;

(5) All test/lab results will be provided as promptly as possible to Plaintiff's counsel; and

---

[3]The fact that Plaintiff will incur some costs or expenses related to the IME's does not persuade the Court that such costs are unduly prejudicial.

(6)     The results of the medical information should be kept confidential if the Plaintiff so

requests; counsel are instructed to provide the Court with an appropriate

confidentiality order to this effect, if necessary.

The Court makes the following modifications to case management deadlines:

(1)     IME's must be conducted and completed no later than:        November 15, 2005

(2)     Defendants' complete Rule 26 expert disclosures
        must be provided to Plaintiff by:                          November 30, 2005

(3)     Plaintiff may depose Defendants' medical experts
        by:                                                        December 20, 2005.

All other case management deadlines, along with settings for the settlement conference and trial,

remain in effect.

IT IS THEREFORE ORDERED that:

(1)     Motion to Extend Defendants' Deadline to File Expert Reports [Doc. No. 27] is

GRANTED as described herein;

(2)     Defendants' Motion for IME (Dr. Warshaw) [Doc. No. 25] is GRANTED as

described herein; and

(3)     Defendants' Motion for IME (Dr. Carr-Locke) [Doc. No. 21] is GRANTED as

described herein.


_____
Alan C. Torgerson
United States Magistrate Judge