IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**LAURA CALVIN,**

       **Plaintiff,**

vs.                                         No. CIV-05-283 WDS/ACT

**STATE OF NEW MEXICO,**
**et al.,**

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

### Introduction

THIS MATTER is before the Court on Defendants Board of Regents of the University of New Mexico, Dr. Gulshan Parasher and Dr. Madrid's ("Defendants") Expedited Motion for Reconsideration of the Order Regarding Motions for Independent Medical Examinations, filed October 20, 2005. [Doc. No. 37.] On October 21, 2005, the Court conducted a telephone conference with counsel for both parties regarding the expedited motion for reconsideration. Plaintiff agreed to file an expedited response by October 24, 2005 and did so. [Doc. No. 38.] Defendants have indicated to the Court that they will not be filing a reply. Defendants' motion for reconsideration does not request an evidentiary hearing, and the Court determines there is no need to conduct an evidentiary hearing before ruling. Therefore, this matter is ready for resolution.

### Background

A summary of Plaintiff's allegations and procedural history of this case is found in the Court's October 14, 2005 Order. [Doc. No. 35.] In that Order, the Court granted Defendants' request to

1

conduct two Rule 35 Independent Medical Examinations ("IMEs") by their Boston, Massachusetts expert physicians. However, the Court declined to order Plaintiff to travel to Boston for the IMEs, finding no legal authority that would require a plaintiff to submit to a Rule 35 examination outside the district in which the case was pending. The Court also observed that Rule 35 IMEs are the exception, rather than the rule, in medical malpractice cases and that Defendants waited until the last minute to request a significant extension of time in which to submit their expert reports, even though they had apparently retained the experts early in the litigation. The Court permitted Defendants additional time in which to provide their expert reports and/or to locate other experts within this district who could conduct the IMEs. Defendants now request reconsideration of that portion of the Court's Order that denied their request to compel Plaintiff to travel to Boston for the IMEs.

## **Motion for Reconsideration**

I.  LEGAL STANDARD

The Federal Rules of Civil Procedure, <u>Clough v. Rush</u>, 959 F.2d 182, 186 n.4 (10th Cir.1992), do not recognize motions for reconsideration. Nonetheless, courts generally construe such motions in one of two ways: "if filed within 10 days of the district court's entry of judgment, it is treated as a motion to alter or amend the judgment under Rule 59(e); if filed more than 10 days after entry of judgment, it is treated as a motion for relief from judgment under Rule 60(b)." <u>Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.</u>, 312 F.3d 1292, 1296 n. 3 (10th Cir.2002). Here, Defendants filed their motion to reconsider within 10 days after this Court's Order. Thus, the Court analyzes the motion under Rule 59(e).[1]

---

[1] Even though Defendants are not asking for reconsideration of a judgment, the Court will treat Defendants' motion in the same manner.

In examining Rule 59(e) motions, the Court analyzes the following factors: was there an intervening change in the controlling law; does new evidence exist that was previously unavailable; or, is there the need to correct clear error or prevent manifest injustice. Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir.2000). *See also* Benne v. Int'l Bus. Machines, 87 F.3d 419, 428 (10th Cir.1996) ("A Rule 59(e) motion to reconsider should only be granted to correct manifest errors of law or present new evidence") (internal quotations omitted). A Rule 59(e) motion is "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." Does, 204 F.3d at 1012.

II.   ANALYSIS

Defendants concede that some legal authority supports the Court's conclusion that a party may not be compelled to travel outside the Court's jurisdiction to conduct an IME. However, Defendants argue there is also legal authority to the contrary that would compel a party to travel outside its jurisdiction "under special circumstances, such as are present in this case." [Doc. No. 37, p. 2.]

The little legal authority found on this issue indicates that a plaintiff may only be required to submit to a medical examination in the district in which the plaintiff filed suit. *See* Matthews v. Watson, 123 F.R.D. 522, 523 (E.D. Pa. 1989). *See also* Bennett v. White Laboratories, Inc., 841 F. Supp. 1155, 1159 (M.D. Fla. 1993) (noting there is no authority to compel a plaintiff to travel long distances for an IME); Costanza v. Monty, 50 F.R.D. 75, 76 (E.D. Wi. 1970) (observing that an IME may be performed in the district where the court sits so that the physician would be subject to the court's jurisdiction should the expert's testimony be needed at trial).

It is true that at least one court has indicated that if a party cannot locate a competent physician to perform a satisfactory exam within the district where the case is pending, the court can compel a plaintiff to travel to a location outside the district.  Steele v. True Temper Corp., 174 N.E.2d 298, 301 (Ohio Com. Pl.), *appeal dism'd*, 193 N.E.2d 196 (Ohio App. 7 Dist. 1961).  However, that court first observed the general rule that the court cannot order a plaintiff to appear at an exam far removed from the environs of the court.  If there are competent doctors or surgeons located in close proximity of the court's jurisdiction,[2] sound discretion dictates that those doctors be selected to perform the examinations.  Id.

Defendants also assert that there is a lack of qualified expert physicians available in this district to conduct the IMEs that they seek.  Defendants argue that there are only certain physicians in this state who perform the medical procedure at issue -- the endoscopic retrograde cholangiopancreatography ("ERCP") procedure.  Those physicians are either named Defendants in this case or have already treated Plaintiff, and therefore cannot perform the IMEs.  Defendants further explain that while there are 45 gastroenterologists in New Mexico, none of them (except the named Defendants, etc.) have experience conducting ERCP's.

In support of this position, Defendants attach a supplemental affidavit of Defendant Dr. Parasher. [Ex. 1.]  Dr. Parasher attests that he is the only gastroenterologist in New Mexico who routinely[3] performs complex ERCP's.  He further testifies that he believes the proposed Boston

---

[2] Defendants' argument that New Mexico is a rural state, lacking in doctors with the required expertise, is unpersuasive.  Even if New Mexico does not have world-renowned physicians in this field, Defendants surely could have found such specialists in closer urban settings like Denver or Phoenix.

[3] Dr. Parasher's careful use of the term "routinely" raises the question whether there are other gastroenterologists in New Mexico with some experience in performing ERCP's.

physicians "are the pre-eminent physicians in the field of complex pancreatic disease" and that they "would provide the best medical assessment and care for Ms. Calvin."

With respect to legal precedent in support of their position, Defendants cite Fletcher v. Southern Farm Bureau Life Insurance Co., 757 F.2d 953 (8th Cir. 1985). The Fletcher decision does not compel a different result than that already reached in this case. In Fletcher, the plaintiff filed suit in the Western District of Arkansas. Before filing suit, the defendant employer required the plaintiff employee to be examined by a physician in Little Rock, Ark. That physician could not conclude the examination because of the plaintiff's refusal. The examining physician then stated that the only place where the plaintiff could receive appropriate testing was in Denver, Colorado. Id. at 954. The Defendant company argued that the plaintiff should be compelled to go to Denver for the examination based on the terms of the contract of insurance. Most significantly in that case, two physicians indicated that they knew of no other facility or physicians in the United States qualified to conduct the type of tests that were necessary to determine the extent of the plaintiff's injuries. Id. at 956-57.

Such is not the case here. Unlike the facts in Fletcher, Defendant Dr. Parasher's supplemental affidavit does not state that he knows of no other physicians, besides the two proposed experts in Boston, who can conduct the contemplated IMEs on Plaintiff. Dr. Parasher merely states that there are no other physicians in this state who routinely perform complex pancreatic ERCP's. The IMEs at issue do not involve an ERCP. The Court has already ordered that the IMEs cannot include an invasive procedure (such as an ERCP) and will only involve a CT scan, blood work, and a physical examination of Plaintiff, if necessary. Defendants do not provide any evidence that the proposed Boston physicians are the only doctors who can perform the proposed testing or that there are no physicians in New Mexico who can perform a CT scan, order blood work and, if necessary, perform

5

a physical examination. The Court also notes that Defendants have offered nothing from the Boston physicians to indicate they personally must perform the testing or examine Plaintiff. Dr. Parasher avers only that Dr. Warshaw and Dr. Carr-Locke are the "pre-eminent physicians in the field of complex pancreatic disease." While Defendants have shown good cause for conducting the IMEs, it does not follow that only the "leading, world-renowned" or "pre-eminent" physicians in the field must conduct the testing and perform the examination.[4] Nothing prevents Defendants from utilizing other local physicians to perform the contemplated testing and physical exam and having their Boston experts provide expert opinions based on this testing and examination.[5]

Based on the above-stated reasons, the Court concludes that Defendants have not provided any grounds for the Court to reconsider its prior decision, thereby requiring Plaintiff to travel to Boston for the IMEs. In other words, Defendants have not supplied any compelling new evidence that was not available before, nor will the Court's prior decision result in manifest injustice. Thus, the Court denies Defendants' motion for reconsideration.

Plaintiff, in her response brief, also asks for reconsideration of that portion of the Court's Order that permitted Defendants an extension to submit its experts' liability reports. The Court declines to reconsider its previous ruling on this issue. Thus, the prior ruling and all deadlines set out in the October 14th Order remain in effect.

IT IS THEREFORE ORDERED that Defendants' motion for reconsideration [Doc. No. 37] and Plaintiff's request for reconsideration set forth in her response [Doc. No. 38] are DENIED. The

---

[4] Similarly, the fact that the Boston physicians might provide the best assessment and "care" for Plaintiff is not the issue. [Parasher Aff.]

[5] Likewise, there is nothing in the record to suggest that the Boston physicians be personally involved in the IMEs in order to offer opinions on liability.

Court's previous ruling and deadlines set out in the October 14, 2005 Order [Doc. No. 35] remain in effect.

 

                                                        Alan C. Torgerson
                                                        United States Magistrate Judge